740 P.2d 65

**GEM STATE HOMES, INC., an Idaho corporation, Plaintiff-Appellant-Cross Respondent,**

v.

**IDAHO DEPARTMENT OF HEALTH AND WELFARE, Defendant-Respondent-Cross Appellant.**

No. 16415.

Court of Appeals of Idaho.

June 24, 1987.

Rehearing Denied Aug. 17, 1987.

Donald Lojek (Lojek & Hall, Ctd.), Boise, for plaintiff-appellant/cross-respondent.

Jim Jones, Atty. Gen., Steven M. Stoddard, Sp. Deputy Atty. Gen., Boise, for defendant-respondent/cross-appellant.

WALTERS, Chief Judge.

Gem State Homes, Inc., sought reimbursement from the state for a portion of its attorney fees and salaries which had been incurred under the Medicaid program. After the Department of Health and Welfare denied the claim, Gem State petitioned the district court for a review of the Department decision. The district court upheld the Department's ruling. Gem State now appeals to this Court. Gem State raises two issues: (1) whether the Department's regulation—which denies attorney fees on departmental review of an auditor's decision disallowing reimbursement of certain costs—is constitutional and consistent with statutory guidelines; and (2) whether the disallowance of salaries for two "unlicensed" employees of Gem State was proper. As part of its decision, the district court remanded the case to the Department for augmentation of the record as it pertained to other disallowances connected with a lease agreement. On cross-appeal, the Department challenges the court's order remanding for augmentation of the record, asserting the lease issue is precluded by *res judicata.* We affirm the decision and order of the district court.

The following facts, taken from the record, are pertinent to the issues before us. Gem State Homes, Inc., is a corporation operating homes for the mentally retarded under the auspices of the Medicaid program. The Medicaid program is a cooperative federal-state program designed to provide medical services to the needy. The federal government provides the funding, and the state administers the program under a state plan approved by the federal government, specifically by the Secretary of Health and Human Services. As a participant in the Medicaid program, Gem State pays its operating costs, then seeks reimbursement from the state for those costs covered by the Medicaid program. At the end of each year, the Department conducts an audit of the operations by Gem State. The audit determines in part what expenses will be reimbursed, and those expenses not reimbursable.

Following the Department's audit for the year ending June 30, 1982, certain expenses incurred by Gem State as attorney fees and salaries were disallowed. Gem State appealed the disallowances to the Department. The Department upheld the auditor's determination. Gem State then appealed to the district court for a judicial review of the Department's final administrative decision. Gem State was also unsuccessful at the district court, and now appeals the district court ruling to this Court.

In its appeal at the district court level, Gem State renewed a challenge to a Department decision which disallowed certain expenses related to a lease agreement between Gem State and the father of a Gem State administrator. The disallowance initially had been made in respect to a pre-1982 audit, from which Gem State had not appealed. The same determination was made in respect to the lease issue in the 1982 audit. Because the disallowance had been challenged and denied in the previous audit, the Department argued that the matter was *res judicata* in respect to the 1982 audit. The district court ruled that it could not decide the lease-expense issue without the transcript from the previous disallowance hearing, which was not in the record. Consequently, the court remanded for an augmentation of the record so that, if Gem State wanted to pursue an appeal of the issue, the court could review the matter with a complete record. In this appeal, the Department contests the district court deci-

sion ordering augmentation of the record. We discuss each of these questions in turn.

## I. Disallowance of Attorney Fees

█ Gem State specifically challenges a Department regulation regarding attorney fees on appeal. That regulation (number 03.010122,02) states:

*Administrative Appeals.* In the case of the provider contesting in administrative appeal, the findings of an audit performed by the Department of Health and Welfare, Office of Audit, the costs of the provider's legal counsel will be reimbursed by the Medicaid Program only to the extent that the provider prevails on the issues involved. The extent that the provider prevails will be determined based on the ratio of the total dollars at issue in the hearing to the total dollars awarded to the provider by the hearing officer.

Pursuant to this regulation, the Department disallowed part of Gem State's legal expenses which had been incurred in administrative appeals.

Gem State, in the terminology of the Medicaid program, is known as a "provider." Under Medicaid and the state program implementing it, all expenses of a provider are not reimbursable. To be reimbursable, the costs must be "reasonable, ordinary, necessary and related to patient care." Idaho Department of Health and Welfare regulation number 03.10100,01. Additionally, providers are expected to incur "costs in such a manner that economical and efficient delivery of quality health care to beneficiaries will result." *Id.* These regulations reflect the federal mandate that payments be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities...." 42 U.S.C. § 1396a(a)(13)(A); *see Nebraska Health Care Association, Inc. v. Dunning,* 575 F.Supp. 176 (D.Neb.1983).

Gem State argues that legal fees for challenging disallowed expenses should be recoverable as a reasonable and ordinary cost of doing business—as long as the challenge is made in good faith. Thus, it submits, a provider should be reimbursed for all legal expenses incurred in contesting a disallowance. Gem State urges that the regulation at issue (03.010122,02) is inconsistent with the statutory scheme and violates its rights of substantive due process and equal protection guaranteed under the fourteenth amendment. We disagree.

Gem State asserts that allowing reimbursement solely on the basis of success on appeal disregards the "reasonable, ordinary, necessary and related to patient care" standards. It likewise argues the regulation is inconsistent with the efficient and economical operation of a provider's facility. Gem State contends that under the regulation the reimbursement is not based on cost, but rather, upon money won at an administrative hearing. However, the relationship between attorney fees reimbursed based on a successful appeal, and the initially incurred expenses which were disallowed must be recognized. This is because the attorney fees won on appeal are reflective of whether the initially incurred expenses were consistent with the applicable standards. If those initial expenditures were in accord with the standards, as shown by a successful appeal, the attorney fees reimbursed will reflect as much. If the original expenditures were inconsistent with those standards, the reimbursement will reflect that situation also.

Gem State continues to urge that if an appeal is brought in good faith, reimbursement is mandatory. Good faith is not the standard by which reimbursement is made. Similarly, the cases cited by Gem State do not support reimbursement of *all costs* even if incurred in good faith. An expense incurred in good faith is not necessarily reasonable, ordinary, necessary, or related to patient care. The regulation at issue encourages the provider to evaluate, first, the initial expenditure. Second, the provider must evaluate the cost of appealing a disallowance. Thus the regulation encourages efficiency and economy in a provider's operations by providing an incentive to incur costs that are consistent with the standards—whether that consistency is shown in the initial audit or on appeal of a disallowance. We cannot say that such a regu-

lation is inconsistent with the federal or state statutory guidelines.

In *State v. Reed*, 107 Idaho 162, 686 P.2d 842 (Ct.App.1984), this Court addressed challenges to asserted violations of substantive due process and equal protection. Substantive due process, we noted, embraces the right of citizens to be free "from arbitrary deprivations of life, liberty, or property." *Id.* at 167, 686 P.2d at 847. We pointed out that statutes which serve a "reasonably conceivable, legitimate [legislative] objective" do not violate those rights protected under the concept of substantive due process. *See Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Providing quality health care to the needy, at a cost which recognizes economy and efficiency, is undoubtedly a legitimate legislative objective. Inherent in such an objective is that those costs not reflecting economy and efficiency should generally not be incurred. Such expenses do nothing to further the accomplishment of the legislative objective. If, however, they are incurred, they should remain the responsibility of those who incur them, rather than the responsibility of the taxpayers who ultimately finance programs such as Medicaid. The regulations require that costs be "reasonable, ordinary, necessary, and related to patient care" if they are to be reimbursable. Attorney fees in general are costs which are subject to these standards. As noted, the regulation at issue encourages providers to incur costs which are reimbursable, i.e., consistent with the standards, either initially or as the result of a successful appeal. The regulation thus furthers the objectives of economical and efficient health care. We conclude that the regulation at issue does not violate guarantees of substantive due process.

As also noted in *Reed, supra* 107 Idaho at 167, 686 P.2d at 847, equal protection embraces the principle that similarly situated persons should be afforded the same benefits and burdens under the law. Under an equal protection analysis, a statute is examined to see if its impact results in classifications or categories of persons which are, in turn, treated differently.

Gem State argues that the regulation at issue treats attorney fees differently from other fees such as those incurred for the services of a certified public accountant. The regulations do treat attorney fees differently from fees of CPA's, health care personnel fees, and other expenses such as the cost of reporters' transcripts. However, we view this treatment as based on the different nature of these expenses and not on any attempt to arbitrarily discriminate. The regulations recognize that legal expenses are divided into two broad areas—attorney fees and costs of litigation. These same distinctions are recognized in statutory provisions and the rules of civil procedure. *See* I.C. §§ 12–101, –107, –114, –120, –121; I.R.C.P. 54. Historically, costs of litigation and attorney fees have been treated differently, and recovery of each is generally governed by statute. 20 Am. Jur.2d Costs §§ 1–3 (1965). Items such as witness fees, expert witness fees, transcript costs, and evidentiary expenses are treated as "costs." I.R.C.P. 54(d)(1); I.A.R. 40. We do not view Gem State's argument as being a challenge to the state's authority to implement such statutes. Rather it appears to be an attempt to classify providers seeking reimbursement for attorney fees and providers seeking reimbursement for litigation costs as similar classes who are treated differently. We conclude that they are not similar classes. Based on the historical and statutorily recognized differences between costs and attorney fees, we do not find Gem State's assertions to present an equal protection problem.

The regulations do distinguish some attorney fees resulting from an appeal of a disallowed cost from other attorney fees. However, not all attorney fees on appeal are disallowed. Rather, they are permitted to the extent they are incurred to show that a previously disallowed expense should have been allowed. Also, *all* attorney fees are still subject to the "reasonable, ordinary, necessary, and related to patient care" standard. Gem State's attempt to show a regulatory classification suggests, at the most, an "under-inclusive"

classification. *See State v. Cantrell,* 94 Idaho 653, 496 P.2d 276 (1972). Such a classification does not constitute an equal protection problem.

The heart of an equal protection violation is a showing that similarly situated persons have been denied equal treatment under the law. Gem State has failed to establish the existence of such categories. Barring any suspect classification the rigorous steps appropriate to equal protection analysis begin and end on that aspect of the analysis. *See State v. Breed,* 111 Idaho 497, 725 P.2d 202 (Ct.App.1986); *State v. Reed, supra.*

As part of its argument, Gem State also asserts that allowing attorney fees only if an appeal is successful chills good faith challenges to disallowed costs by impairing a provider's access to the courts. We find such an assertion to be untenable. The right to appeal a disallowance is not affected by the regulations. The state plan was not designed to provide attorney fees to a provider who wants to challenge every disallowance that it in "good faith" thinks should have been allowed. There will continue to be disagreements between a provider and the Department over whether incurred costs were reasonable or necessary. By appealing a disallowance to the courts, the provider is permitting a third party—the judge—to determine whether the disallowed costs were indeed reasonable. There will be a chill placed on challenges to *obviously* disallowable costs. There may also be a slight chill placed on challenges to those costs which fall into a somewhat grey area. However, the burden placed on a provider to decide whether an appeal itself is reasonable is slight when compared to the burden placed on the Department, the Medicaid program, and the citizens who fund it if challenges could be made without considerations of economy and efficiency. As we view it, the regulation will cause providers to evaluate whether a challenge should be made to show that a disallowed cost was reasonably incurred. Under Gem State's position, there is little or no incentive for such an evaluation. We conclude that the regulation is constitutional and does not offend guarantees of substantive due process or equal protection.

## II. Disallowance of Salaries of Unlicensed Employees

Gem State next challenges the district court ruling which upheld the disallowance of one employee's salary and partially disallowed the salary of another employee. The disallowances resulted because the employees were not licensed to do the work they performed at Gem State's facility. Gem State argues that the disallowed salaries should have been reimbursable because the employees' work was done satisfactorily, and the state, in essence, "got what it paid for," despite the lack of licenses.

The first employee, Mrs. Fowler, was employed as a social worker. At the time she rendered her services, she was not licensed by the state as a social worker under title 54, chapter 32, Idaho Code. The district court affirmed the disallowances because applicable federal and state regulations require that social workers be licensed.

Idaho Code § 54–3214(1) requires social workers to be licensed unless they are a student or a volunteer working under the supervision of a licensed social worker. Mrs. Fowler was not licensed nor working under a licensed social worker's supervision. Department regulations which govern facilities such as Gem State's must be "consistent with rules and regulations issued by U.S. Department of Health, Education, and Welfare." Idaho Department of Health and Welfare regulation number 02.17000. The applicable federal regulation, found at 42 C.F.R. § 442.428, requires the same licensing for positions and facilities such as Gem State's "as are required for comparable positions in community practice...." Federal regulations also identify a social worker as a person who is:

> licensed, if applicable, by the State in which practicing, is a graduate of a school of social work accredited or approved by the Council on Social Work Education, and has 1 year of social work experience in a health care setting.

42 C.F.R. § 405.1101(s).

A license is required to engage in certain trades. If a license designed to protect the

public is required, and it is illegal to engage in practice without that license, a party cannot recover for his services rendered absent the license. It is violative of public policy. *See Johnson v. Delane*, 77 Idaho 172, 290 P.2d 213 (1955). It would similarly follow that reimbursement for such services would also be violative of public policy. These federal and state regulations clearly require licensing of social workers at facilities such as Gem State's. Fowler did not meet these qualifications. The Department's basis for denying the reimbursement was clearly established, and the district court did not err in affirming the disallowance.

The other employee, Ms. Sieber, also was not licensed as a social worker per I.C. § 54–3214. However, she was performing the duties of a Qualified Mental Retardation Professional (QMRP). The Department disallowed a portion of Ms. Sieber's salary. The reason given for disallowing all of Fowler's salary and disallowing only part of Sieber's salary was that the social worker position was not required at the Gem State facility, but the QMRP position was required. The district court noted that apparently all of Sieber's salary could have been disallowed based on the same reasoning that Fowler's was disallowed. Gem State, on appeal, asserts the same argument as in the case of Fowler—the services were performed satisfactorily and, therefore, should be paid for, the absence of a license notwithstanding.

We have been asked to review only the disallowed portion of Sieber's salary reimbursement, not the allowed portion. However, the same justification applicable in Fowler's situation controls here. Sieber was not licensed; disallowing reimbursement for her salary would also be consistent with federal and state regulations. We would note the fact the Department allowed a portion of Sieber's salary contradicts Gem State's assertion that the Department "aggressively ... disallow[s] costs whenever there is arguably a theoretical or technical basis for doing so...." We find no error by the district court in affirming the disallowances.

## III. District Court Order for Augmentation of Record

The Department asserts that the district court erred in remanding the proceeding to the Department for an augmentation of the record. The Department argues that the issue and the claim before the district court had already been decided and were thus *res judicata. See Aldape v. Akins*, 105 Idaho 254, 668 P.2d 130 (Ct. App.1983).

Briefly, this issue arose as the result of the Department's disallowance of certain lease fees. Gem State leased its facility from the father of one of Gem State's administrators. Department regulations limit the amount reimbursable to a provider involved in "related party transactions." Certain of Gem State's lease expenses had previously been disallowed based on this regulation. Gem State had not appealed those disallowances. For the year in question, certain of Gem State's expenses in connection with the same lease were again disallowed. The Department asserted that the issue and claim were *res judicata* because they had been previously ruled upon by the Department in an administrative hearing. Thus, in the absence of any new facts, the Department contended that further litigation of the issue was improper. The Department contends that no new facts were shown.

The district court stated in its opinion that this case involved issue preclusion as opposed to claim preclusion. The Department on appeal asserts that both claim preclusion and issue preclusion apply. We agree with the district court's ruling.

Gem State's failure to appeal the Department's earlier disallowances would bar relitigating those claims. *Henderson v. State*, 110 Idaho 308, 715 P.2d 978 (1986), *cert. denied*, 477 U.S. 907, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986). However, the subsequent disallowances in a different fiscal year would constitute a basis for new claims. RESTATEMENT (SECOND) OF JUDGMENTS § 24, comment d (1982). Accordingly, there would be no need for an augmented record since claim preclusion would not apply to this situation. Al-

though Gem State's claims for the present disallowances would not be barred under claim preclusion, Gem State would be barred from relitigating the same issues ruled upon in the earlier hearings.

Under issue preclusion the same issues must have been litigated in the previous action to operate as a bar in a subsequent action. *Aldape v. Akins, supra.* The district judge indicated he could not fully review the issue preclusion questions without the hearing transcript on which the present disallowances were based. If the record does not adequately identify the issues previously litigated, extrinsic evidence is admissible to make such a determination. RESTATEMENT (SECOND) OF JUDGMENTS § 27, comment f (1982). A determination as to whether the same issues are involved will have to be made by the district court upon its review of the transcript of the earlier litigation. Under these circumstances, we cannot conclude that the district court erred in remanding for augmentation of the record.

The decision of the district court is affirmed. Both parties having prevailed in part, no attorney fees or costs are awarded on appeal.

SWANSTROM, J., concurs.

BURNETT, Judge, specially concurring.

I join in the Court's opinion. However, I write separately because Gem State's challenge to the regulation limiting recovery of attorney fees merits closer examination. First, I will address Gem State's argument that the regulation conflicts with the federal Medicaid scheme. Second, I will discuss the standards governing the equal protection issue.

I

As the lead opinion correctly notes, Medicaid is a cooperative undertaking by the federal government and the states. In order to qualify for federal funding, a state must submit a plan to the U.S. Department of Health and Human Services (HHS). The plan will be approved if it satisfies criteria set forth in 42 U.S.C. § 1396a. The statute does not prescribe in detail the costs for which a health care provider may obtain reimbursement. Neither does it specify the rate of such reimbursement. Rather, it lays out broad contours for state plans. Within the limits of the statute, and of interpretive regulations promulgated by HHS, each state is encouraged to develop its own reimbursement scheme. *Mississippi Hospital Ass'n v. Heckler,* 701 F.2d 511 (5th Cir.1983); *Thomas v. Johnston,* 557 F.Supp. 879 (W.D.Tex.1983). "Congress, in passing the Medicaid statute, specifically contemplated allowing states wide discretion in implementing the program." *Troutman v. Cohen,* 588 F.Supp. 590, 592 (E.D.Pa.1984), *aff'd without opinion,* 755 F.2d 924 (3d Cir.1984). Consequently, judicial review is limited to determining whether (1) the state plan is in compliance with federal law, and (2) the state regulation under challenge has a rational basis. As the Fifth Circuit has explained, "our role does not extend to reweighing or rethinking the political and financial concerns behind a particular payment plan." *Mississippi Hospital Ass'n v. Heckler,* 701 F.2d at 516.

Gem State argues that the Idaho regulation, which allows attorney fees in administrative appeals only to the extent that the provider ultimately prevails, is inconsistent with federal law. However, neither the statute nor any federal regulation specifies whether and to what extent the states are required to reimburse such fees. The statute simply provides that a state must reimburse expenses "which the State finds, and makes assurances satisfactory to [HHS], are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities...." 42 U.S.C. § 1396(a)(13). Here, Idaho has determined, and HHS presumably has agreed,[1] that attorney fees expended in un-

---

1. The attorney fee regulation was adopted after Idaho's plan was initially approved. Federal regulations provide for the prompt submission to HHS, and prompt review by the agency, of amendments to state plans. *See* 45 C.F.R. § 201.3. If an amendment is not submitted to HHS for review, and the change conflicts with federal law, federal funds will be withheld. 45

successfully challenging audit disallowances of health care reimbursement claims are not "costs which must be incurred by efficiently and economically operated facilities." Those courts which have considered the attorney fee issue have concluded that the federal scheme does not require all, or any, attorney fees to be allowed. *See Mississippi Hospital Ass'n v. Heckler, supra; Country Club Home, Inc. v. Harder,* 228 Kan. 756, 620 P.2d 1140 (1980), *modified,* 228 Kan. 802, 623 P.2d 505 (1981); *State ex rel. Living Services, Inc. v. Thompson,* 95 Wash.2d 753, 630 P.2d 925 (1981) (en banc). *Cf. Haven Home, Inc. v. Dep't. of Public Welfare,* 216 Neb. 731, 346 N.W.2d 225 (1984) (state not required to reimburse provider for every allowable cost). Accordingly, I am constrained to agree with my colleagues that the Idaho regulation does not conflict with federal law. In addition, even though I believe the regulation has a significant chilling effect upon good faith challenges to audit disallowances, I cannot say that it lacks a rational basis.

## II

I now turn to the equal protection issue. The regulation under review creates two classifications. First, it differentiates between providers who seek attorney fees and those who seek recovery of other types of expenses, incurred while challenging audit disallowances. The second classification distinguishes between providers who prevail on their challenges and those who do not.

The courts have employed a three-tiered methodology in reviewing statutes or regulations alleged to violate equal protection. Laws that create "suspect" classifications based on race or alienage, or which deprive persons of fundamental rights, are subjected to "strict scrutiny." Traditionally, all other laws have been subjected to a more deferential "rational basis" test. However, the United States Supreme Court recently has applied a third, "intermediate" stan-

dard of review to cases involving especially important, though not necessarily "fundamental," interests, and to cases where unusually sensitive, although not necessarily "suspect," classes have been created. *See* discussion in *State v. Reed,* 107 Idaho 162, 170, 686 P.2d 842, 850 (Ct.App.1984). Among the classifications triggering intermediate scrutiny are those based on gender. *See generally* L. TRIBE, AMERICAN CONSTITUTIONAL LAW §§ 16–24 to 16–28 (1978). It is of more than historical interest that the benchmark case on gender classification, *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), struck down an Idaho statute. In 1976, the Idaho Supreme Court interpreted that case and other U.S. Supreme Court decisions to create an intermediate standard applicable to "invidiously discriminatory classifications." *Jones v. State Board of Medicine,* 97 Idaho 859, 867, 555 P.2d 399, 407 (1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). *See also Tarbox v. Tax Commission of Idaho,* 107 Idaho 957, 960, 695 P.2d 342, 345 (1985) (stating that the intermediate standard applies to "blatantly discriminatory" schemes). A law will survive judicial review under the intermediate standard only if it "substantially furthers some specifically identifiable legislative end." *Jones,* 97 Idaho at 867, 555 P.2d at 402.

As we noted in *State v. Reed, supra,* the Idaho Supreme Court has not yet authoritatively delineated what it means by "blatant" or "invidious" discrimination. Nor is it clear how far the application of Idaho's intermediate standard extends beyond the scope of cases in which a federal intermediate standard has been employed. *See State v. Breed,* 111 Idaho 497, 725 P.2d 202 (Ct.App.1986). Nevertheless, I am satisfied that today's case does not fall within the ambit of any intermediate standard. The classifications here do not appear calculated to benefit one clearly identifiable group of persons at another group's ex-

---

C.F.R. § 201.6. Further, an amendment to a state plan cannot be enforced until HHS approval has been obtained. *Washington State Health Facilities Ass'n v. Washington Dept. of Social and Health Services,* 698 F.2d 964 (9th

Cir.1982). In this case, the regulation regarding attorney fees has been in effect since 1982. Absent a contrary indication in the record, I must presume that Idaho submitted its plan amendment to HHS and that the agency approved it.

pense. To the contrary, it is likely that a health care provider will in some instances be favored by the classifications at issue here, in other instances be disfavored, and in yet others be favored in part and disfavored in part. These circumstances do not suggest a "clearly evinced legislative purpose to discriminate." *Breed,* 111 Idaho at 501, 725 P.2d at 206. Thus, the lead opinion today correctly applies the rational basis test rather than an intermediate standard.

However, the classifications are "underinclusive." That is, they confer a benefit or impose a burden upon some persons in a manner which furthers a legitimate public purpose, but do not confer the same benefit or impose the same burden on all persons similarly situated. *See State v. Cantrell,* 94 Idaho 653, 496 P.2d 276 (1972). The United States Supreme Court has upheld underinclusive statutes on the theory that a legislature or agency need not address all perceived evils at the same time or in the same way. Rather, it may implement a program step by step, adopting measures that partially ameliorate an evil while deferring a complete solution to the future. *E.g. Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981); *Williamson v. Lee Optical,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955). Here, the evil perceived by drafters of the Idaho Medicaid plan appears to be the impact of administrative appeals, with their attendant costs, upon the finite resources available for health care. The drafters' response has been to reduce one category of expense, attorney fees, and to discourage some appeals from being filed, by limiting recovery of fees. Although the wisdom of this scheme is debatable, I believe its classifications are constitutionally permissible despite their underinclusiveness.

This does not mean that I agree with the broad statement in the lead opinion, that an underinclusive classification "does not constitute an equal protection problem." Underinclusive schemes may be, and have been, struck down. *See Califano v. Westcott,* 443 U.S. 76, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979) ("Congress may not legislate 'one step at a time' when that step is drawn along the line of gender...."); *O'Brien v. Skinner,* 414 U.S. 524, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974) (invalidating absentee voting statute which did not extend to jailed persons). However, these cases involved the fundamental right to vote and a gender-based classification. In contrast, the *Lee Optical* and *Clover Leaf Creamery* cases involved business regulations subject to the rational basis test. They are more akin to the case before us. Where the equal protection issue is confined to a rational basis inquiry, greater deference to underinclusive classifications is justified. With this qualification, I concur in the lead opinion's refusal to invalidate the attorney fee regulation.