755 P.2d 479

**John MADSEN, Plaintiff–Appellant,**

v.

**STATE of Idaho, DEPARTMENT OF HEALTH AND WELFARE, Defendant–Respondent.**

No. 17037.

Court of Appeals of Idaho.

May 5, 1988.

Rehearing Denied May 26, 1988.

Petition for Review Denied June 28, 1988.

John Madsen, pro se.

Jim Jones, Atty. Gen., Teresa A. Sobotka, Deputy Atty. Gen., Boise, for defendant-respondent.

WALTERS, Chief Judge.

This is an appeal from an order of the district court upholding a decision of the Department of Health and Welfare requiring John Madsen to contribute financially to the cost of care provided by the Department to him in his home. We affirm.

John Madsen was approved for participation in a personal care service offered through the Home and Community Based Services Program of the state Department of Health and Welfare under Title XIX of the federal Social Security Act. 42 U.S.C. § 1396n; I.C. §§ 56–201(o) and 56–209b. Federally regulated, the program is designed to permit the state to offer an array of home and community-based services for aged, blind or disabled persons receiving Medicaid benefits, as an alternative to institutionalization. *See* 42 C.F.R. ch. IV § 441.300. This program allowed Madsen to receive care in his own home, but required that he contribute toward the cost of his care an amount equivalent to the excess of his available income over the cost of his basic needs. Upon determining that Madsen's income was $617 per month and that the amounts allowed under the applicable regulations for the costs of his basic needs totaled $388 per month, the Medicaid Policy Section of the Department notified Madsen that his contribution would be the difference between the two sums, or $229 per month.

Contending that he was financially unable to contribute the sum of $229 per month toward the cost of his care, Madsen sought a departmental review of the determination made by the Medicaid Policy Section. *See* I.C. § 56–216. Following a hearing before a Department administrative hearing officer, findings of fact, conclusions of law and a decision were entered upholding the contribution determination. Madsen then petitioned the district court for judicial review of the Department's proceedings.

The district court, conducting the review under I.C. § 67–5215,[1] upheld the administrative hearing officer's decision. Presented with the record, including a transcript of the hearing officer's proceeding, the court held there was reliable, probative and substantial evidence to support the findings of the officer and that the officer's conclusions were supported by the facts and the law. The court determined that there were no irregularities alleged with respect to the Department's procedure which would require additional proof to be taken. The court found no indication that the administrative findings, inferences, conclusions or decisions were in violation of constitutional or statutory provisions, exceeded the statutory authority of the Department, were made through an unlawful procedure, or were affected by other error of law. The court concluded that the Department's action was in full accord with the mandates of the statutes governing the personal care service program and was not in any way arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.

On appeal from the district court's affirmance, Madsen makes the following as-

---

1. In relevant part, I.C. § 67–5215 provides:

(f) The review shall be conducted by the court without a jury and shall be confined to the record. In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. The court, upon request, shall hear oral argument and receive written briefs.

(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) affected by other error of law;

(5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

sertions. First, he avers he suffered anguish and pain as a result of a threatening and abusive telephone call received from Jerry Nuxoll (identified during the administrative hearing as a field supervisor with the Department's Boise Office) following the hearing officer's decision. Next, he contends the district court ignored a request by him to hold two representatives or employees of the department in contempt of court because they persuaded Madsen's "personal care attendant" to leave Madsen's employ by informing the attendant that Madsen would lose his case in the district court, prior to the issuance of any decision in the case by the court. Third, he asserts the calculations regarding his living expenses "ignore reality" and "are patently ridiculous." He argues that, if he were required to pay the amount set by the Department, he would be unable to eat or to maintain a home and thus would be deprived of life without due process. Citing I.C. § 67–5215(g)(1) and (6), he submits the hearing officer's decision was "in violation of constitutional or statutory provisions" and was "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

## I

We turn first to Madsen's recitation concerning the allegedly abusive and threatening telephone call. We cannot ascertain from Madsen's argument whether he believes any error occurred with respect to that claim in the proceeding below, or whether Madsen simply wished to inform us of the existence of the claim, as background. It appears that Madsen presented the claim to the district court in his initial pleading which also sought judicial review of the Department's administrative proceeding relating to the contribution to his in-home care service. He prayed for an award of a specified sum as damages for mental and physical suffering caused by the telephone call.

Evidently, a duplicate copy of the pleading was made and the clerk of the district court opened two files—one for the damage action based on the alleged telephone call, the other for a judicial review of the Department's administrative action. Separate docket numbers were assigned to the files. The judicial review case was given district court number 90075 and now appears as the appeal in this case, our number 17037. The other file was assigned number 90076 in district court and resulted in appeals to the Supreme Court in cases numbered 16996 and 17121. Consequently, both cases in district court proceeded separate and apart from each other. Because the action for damages remains as the subject of another case, or cases, on appeal, we need make no determination relative to the damage action in this opinion. We limit our concern in this case only to a review of the district court's decision upholding the Department's administrative action.

## II

We turn next to Madsen's claim that the district court "ignored" a request by Madsen to hold certain persons (a caseworker and a nurse) in contempt of court for persuading Madsen's personal care attendant to leave Madsen's employ in anticipation that Madsen would "lose" his case in the district court. This request was raised by a motion filed with the district court after the court had entered its decision and order on review of the administrative process.

The record before us does not show the district court acted on Madsen's motion—explaining, perhaps, Madsen's impression that the motion was "ignored." However, the record does disclose that Madsen's motion to hold the nurse and caseworker in contempt of court was filed simultaneously with his notice of appeal from the order of the district court upholding the administrative decision of the Department. The filing of a notice of appeal divests the district court of jurisdiction to proceed further with an action, except in certain particular respects specifically delineated in Idaho's appellate rule 13. Madsen's contempt motion does not appear to fall within any of the

subject matters stated in that rule.[2] Thus, it is understandable that the district court did not act on Madsen's motion, causing Madsen to misperceive that the court "ignored" the motion by inaction. Because Madsen's notice of appeal deprived the court of authority to proceed on the motion filed by Madsen, we hold no error occurred as a result of the court's inaction.

### III

We turn finally to the real crux of this appeal. Madsen contends that the Department's calculations regarding his living expenses ignore reality and are "ridiculous." He argues that requiring him to contribute to his care is arbitrary, capricious, an abuse of discretion, and would deprive him of life without due process. In light of the evidence presented to the administrative hearing officer in this case we find no merit to Madsen's contentions.[3]

Mr. Forbes, the alternative care coordinator with the Medical Policy Section of the Department's Bureau of Medical Assistance, testified before the hearing officer. Forbes related that Madsen's medical condition[4] qualified him for nursing home care under the Medicaid program. As an alternative to institutional placement, Madsen was approved for participation in the personal care services program. Forbes explained that eligibility in the latter program required the participant to financially contribute to his care. The amount of contribution depended upon the participant's income after deducting amounts allocated to the participant's needs, under the Department's rules. Forbes presented a copy of a letter he had written to Madsen, informing him of his eligibility and the requirement of contribution, as a participant in the personal care services program. The letter disclosed that "Due to federal program requirements, your continued eligibility for Idaho Medicaid and Personal Care Services is *dependent* on the payment of these monies to the Department." [Emphasis in original.] Madsen admitted receiving the letter.

Jerry Nuxoll, the eligibility supervisor with the Boise Field Office of the Department, also testified. He explained that Madsen's level of income (apparently as well as his medical condition) qualified Madsen for nursing home care. With respect to the personal care service, he stated "If it were not for this program we would not be able to help Mr. Madsen in any way unless he were in a nursing home." Nuxoll explained the process of arriving at the participant's contribution to the cost of medical care each month. He related, "[W]hat you do particularly is set up a manual for the client based on his allegations of what his needs are within the Department's maximums. In the case of Mr. Madsen, it amounted to $176.00 basic allowance [for food, clothing and household expenses], maximum $118.00 housing, and maximum $94.00 utility allowance which limited his budgeted needs at $388.00."

According to the evidence presented to the hearing officer, the Department's cal-

---

**2.** One of the powers reserved to the district court, notwithstanding a notice of appeal, is to "[t]ake any action or enter any order required for the enforcement of any judgment, order or decree." I.A.R. 13(b)(12). This authority clearly would include the use of contempt proceedings for "enforcement of any judgment, order or decree" while an appeal is pending. However, in the instant case, Madsen—by his motion for a contempt citation—did not seek in any way to "enforce" the order of the district court upholding the Department's administrative decision. Rather, the motion apparently was filed in the hope of collaterally obtaining punishment of the alleged contemnors for conduct occurring in anticipation of the outcome of this case in district court.

**3.** Our standard of review in a case such as the instant one is well settled. Where the district court acts in an appellate capacity in a review under the Administrative Procedure Act, I.C. § 67–5215(b) through (g), on further appeal from the district court's determination, we review the record independently of the district court's decision. *Ferguson v. Board of County Commissioners for Ada County,* 110 Idaho 785, 788, 718 P.2d 1223, 1226 (1986).

**4.** The transcript of the hearing officer's proceeding does not disclose the nature of Madsen's "medical condition," beyond a passing reference by Madsen to the need for a wheelchair. It appears Madsen's condition was not in dispute and the hearing officer did not make any finding regarding the nature of Madsen's condition.

culations were made pursuant to IDAPA 16.03.9146.10(a)(i). That regulation was promulgated by the Department in order to participate in the Home and Community–Based Services Program, pursuant to 42 C.F.R. ch. IV § 441.303(e). The conclusions of law entered by the hearing officer at the completion of the administrative proceeding in this case explain how the calculation process in Madsen's case worked. Those conclusions state:

> In order to participate in the Home and Community–Based Services Program the State of Idaho must comply with federal regulations, called "waiver requirements." 42 CFR Ch. IV Section 441.-303(e). One of these waiver requirements is that the participating state agency must furnish home and community-based services with an explanation of how the agency will apply the applicable provisions regarding post-eligibility treatment of income and resources of those individuals receiving home and community-based services who are eligible under a special income level. The Department complies with this waiver requirement by what is known as "Attachment J." Attachment J states in pertinent part as follows:

>> The agency will reduce its payment for home and community-based services provided to individuals outlined under Item 3c of the waiver submitted by the State of Idaho by the amount that remains after deducting the following amounts from the individual's income:
>> 1. An amount for the maintenance needs of an individual. This amount will be based on reasonable assessment of need, but will not exceed the highest income standards for State Supplemental Assistance for blind or disabled individuals living in their home.

>> .    .    .    .    .

>> 4. Amounts for incurred expenses for medical or remedial care not paid by a third party, including Medicare and other health insurance premiums and certain limited services not covered by the State's Medicaid plan.

"Attachment J" is essentially a summarized statement of Manual Section 3–9146.10, which states as follows:

> *Client Participation.* A recipient will not be required to participate in the cost of care of his P.C.S. [Personal Care Services] unless his entitlement to MA [Medical Assistance] is based on his entitlement to home and community-based services pursuant to Eligibility Manual Section 3–1404.
> a. The amount of client participation for an individual not exempt from the client participation requirement is determined by deducting the following amounts in the following order from the individual's own income, including income disregarded in determining his MA [Medical Assistance] eligibility:
> i. First, the individual's AABD [Aid to the Aged, Blind and Disabled] standard of need determined as though he were living alone in his own home using actual costs for housing and utilities up to the applicable maximums as specified in Eligibility Manual Sections 3–1281, 3–1282 and 3–1283; and

> \*    \*    \*    \*    \*    \*

> iii. Third, amounts for the individual's incurred expenses for Medicare and other health insurance premiums, deductibles or coinsurance charges not paid by a third party. The client must report such expenses to the field office and provide verification in order for an expense to be considered for deduction.
> iv. Fourth, amounts incurred for certain limited medical or remedial services are not covered by the State's Medicaid plan and not paid by a third party.

According to Manual Section 3–9146.-10(a)(i) the following amounts are deducted from Petitioner's Social Security income of $617.00: $118.00 Shelter Allowance (Manual Section 3–1281); $176.00 for basic needs, (Manual Section 3–1288.-01); $94.00 for utilities, (Manual Section 3–1283.02 through 3–1283.05). Manual Section 3–9146.01(b) states that the remainder, in this case $229.00, is to be

paid to the Department's Bureau of Medical Assistance, Third–Party Liability Unit, to offset the cost of care provided by the Personal Care Services provider. If the contribution is not paid to the Department, the Department will deduct the required contribution from the amount paid to the Personal Care Services provider. The provider is then instructed by the Department to collect the amount of the required contribution from the recipient. Manual Section 3–9146.-10(b)(iii).

Based on the evidence, the hearing officer concluded that the Department had correctly determined Madsen's contribution to his care and, since Madsen had received timely and adequate notice of his contribution amount, the hearing officer lacked authority to reduce Madsen's payments.

We do not find any error in the proceedings below, either in the Department's administrative action or on the district court's appellate review. Madsen has not demonstrated that the Medicaid program allowing for personal care service has been administered by the Department in violation of any federal or state law or regulation. The requirement that Madsen contribute to the cost of his care as an alternative to institutionalization is not unreasonable. The method of calculating the contribution based upon Madsen's income after receiving allowance at the maximum permitted by the Department's regulations is not arbitrary, capricious nor an abuse of discretion. The order fixing the amount of contribution at $229.00 per month is affirmed. No costs allowed. No attorney fees allowed.

McFADDEN, J., Pro Tem, concurs.

BURNETT, Judge, specially concurring.

Based upon the record presented, I am constrained to join in today's decision. Nevertheless, I write separately to note some continuing concerns.

Madsen has challenged the manner in which the State of Idaho operates the Personal Care Services (PCS) component of its Medicaid program. PCS is an alternative to institutional care. It allows needy individuals to receive health-related services in their own homes rather than in nursing homes or other facilities. PCS gives such individuals a sense of dignity and independence, while alleviating pressure on institutional resources. However, Madsen claims that PCS is not accomplishing these objectives in Idaho. He argues that the state regulations require him to pay so much for PCS benefits that he has insufficient money left for shelter, food and other essentials. He asserts, in essence, that state regulations are forcing him either to rely on private charity or to live in a nursing home.

Madsen has presented this challenge to a hearing officer for the Idaho Department of Health and Welfare, to a district judge, and now to us. In each instance he has received the same response. It is, simply, that Idaho's regulations have been applied correctly to him. While this rejoinder may be true, it leaves unanswered the more fundamental thrust of Madsen's attack—that there are problems within the regulations themselves.

Our inquiry into the validity of state regulations, adopted to carry out a federally funded program, is threefold: (1) whether the regulations are consistent with constitutional standards; (2) whether they conform to the intent of Congress in establishing the program; and (3) whether they are consistent with federal regulations developed to implement the program. As to each point, the party challenging the regulatory scheme bears the burden of proving facts sufficient to show a fatal defect in the design or application of the scheme. *See Gem State Homes v. Department of Health & Welfare*, 113 Idaho 23, 29, 740 P.2d 65, 71 (Ct.App.1987) (concurring opinion).

Although Madsen's pleadings and briefs are drafted inartfully, it is clear that his challenge goes mainly to the first level of inquiry—the constitutionality of the state regulations. Specifically, he has alleged that the regulations deprive him of property without due process because they employ irrationally low subsistence allowances

to determine the net income available for contribution to the Medicaid program. However, Madsen has presented only anecdotal evidence concerning his individual circumstances. He states that he cannot afford to remain where he presently resides if he makes the required contribution to the state. However, this alone does not prove that the regulations lack a rational basis, nor does it show a deprivation of property in a constitutional sense. The PCS program is an option. The institutional alternative remains available. At most, Madsen has shown that the PCS option does not fit his circumstances. I cannot conclude upon this narrow information that the state regulations suffer from a substantive due process infirmity.

The remaining questions, which Madsen raises by implication, are whether the Idaho regulations are consistent with the intent of Congress and whether they conform to federal regulations implementing the home care program. I find nothing in the federal regulations to contravene the state regulations challenged here. Regarding the intent of Congress, there is a dearth of legislative history. However, Congress evidently envisioned home and community-based services as a genuine alternative to institutional living, allowing health needs to be met in a more dignified setting and, possibly, saving money on institutional care. See 42 U.S.C. § 1396n(c); 42 C.F.R. § 441.300–.310 (1987).

Upon the record presented, I cannot say that the Idaho scheme violates this congressional intent. It may well be that Madsen cannot afford living arrangements of his choice if he participates in the PCS program. However, this does not necessarily signify—and Madsen has not otherwise attempted to prove—that it would be impossible for anyone to obtain safe and sanitary housing, food and other essentials on the subsistence budget contained in the Department's regulations.

In sum, Madsen has not made the record necessary to support his broad challenge to the state regulations. Accordingly, I agree that he has not presented a claim entitling him to relief. However, I reserve for another day and another record the question whether the Idaho regulations create a genuine home care alternative as envisioned by Congress.