718 P.2d 589

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Mary Lou KNOLL, Defendant-Appellant.**

**No. 16050.**

Court of Appeals of Idaho.

May 1, 1986.

Frederick G. Loats, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., by Lynn E. Thomas, Sol. Gen., and Myrna A.I. Stahman, Boise, for plaintiff-respondent.

BURNETT, Judge.

We are asked to review a district court decision upholding a judgment of conviction for driving under the influence of alcohol. The appeal presents two questions: (1) Does Idaho's DUI statute create separate offenses—driving under the influence of alcohol, and driving with a proscribed blood-alcohol content—which require mutually exclusive methods of proof? (2) Is the result of a blood-alcohol test admissible without supplementary evidence showing how the result "relates back" to the time when the motor vehicle was operated?

These issues are framed by undisputed facts. At approximately 1:00 a.m. on August 12, 1983, a Kootenai County sheriff's deputy stopped an automobile on a public highway. The driver was Mary Lou Knoll. Some 47 minutes later, Knoll submitted to a blood-alcohol test, yielding a result of .25%. Knoll was charged with a misdemeanor, specified in the complaint as "operat[ing] a motor veh[icle] upon [a] public roadway while under the influence of an alcoholic beverage...." She initially pled not guilty and filed a motion to exclude the test result from evidence. The presiding magistrate denied the motion. Knoll then entered a conditional plea of guilty, reserving the right to argue on appeal that her motion had been wrongly denied. After the magistrate entered a judgment of conviction, Knoll appealed to the district court. The district judge sustained the magistrate's ruling on the motion and upheld the

judgment. Knoll appealed again, bringing the case to us. We affirm.

## I

Knoll was charged with violating the DUI statute enacted during an Extraordinary Session of the Legislature in 1983. The statute was codified as I.C. § 49–1102. It now appears, with some changes, as I.C. § 18–8004. *See* 1983 Idaho Sess. Laws (Ex.Sess.) ch. 3, § 13, pp. 17–18; 1984 Idaho Sess. Laws ch. 22, §§ 1 and 2, pp. 29–30. In pertinent part, the 1983 statute provided as follows:

(1) It is unlawful for any person who is under the influence of alcohol, drugs or any other intoxicating substances, *or* who has 0.10 percent or more, by weight, of alcohol in his blood, urine or breath, as shown by chemical analysis of his blood, urine, breath, or other bodily substance, to drive or be in actual physical control of a motor vehicle within this state, whether upon a highway, street or bridge, or upon public or private property open to the public.

(2) Any person having less than 0.10 percent, by weight, of alcohol in his blood, urine or breath, as shown by chemical analysis of his blood, urine, breath, or other bodily substance by a test requested by a police officer *shall not be prosecuted* for driving under the influence of alcohol, except as provided in subsection (3). Any person who does not take a test to determine alcohol concentration may be prosecuted for driving or being in actual physical control of a motor vehicle while under the influence of alcohol, drugs, or any other intoxicating substances, on other competent evidence.

(3) If the results of the test requested by a police officer show less than 0.10 percent, by weight, of alcohol in the person's blood, such fact may be considered with other competent evidence of drug use other than alcohol in determining the

guilt or innocence of the defendant. [Emphasis added.]

Knoll contends that subsection (1), which prohibits any person to drive a motor vehicle on a public highway "while under the influence of alcohol" *or* while having "0.10 percent or more, by weight, of alcohol in his blood," creates two distinct offenses. Upon this hypothesis she argues that the state must choose which offense to prosecute and may not adduce evidence of a blood-alcohol level if it has chosen to prosecute for "driving under the influence." Accordingly, she urges that the result of her blood-alcohol test would have been inadmissible at trial on a complaint charging her with driving "under the influence." A similar contention recently has been considered, and rejected, by a panel of this Court in *State v. Brown*, 109 Idaho 981, 712 P.2d 682 (Ct.App.1985). However, because the issue continues to generate controversy,[1] we will examine it in greater detail here.

We begin by acknowledging that the 1983 statute is not a model of clarity. In a single sentence of 82 words, subsection (1) combines clauses referring to a fact (a motorist's blood-alcohol level) and to a familiar description of the crime (driving "under the influence"). Linking these clauses with the disjunctive term "or," the statute seemingly invites the criticism that it confuses a fact with the definition of a crime. However, the statute should not be condemned, or shallowly construed, upon its awkward syntax. The statute reflects an effort by our elected representatives to express a coherent public policy on alcohol and traffic safety, in light of rapidly shifting public attitudes and advances in scientific knowledge. We are mindful of Disraeli's famous admonition: "It is much easier to be critical than to be correct."

The statute was not enacted in a vacuum. It has been demonstrated empirically, and it is now widely accepted, that a motorist's ability to drive safely is adversely affected

---

**1.** At least one trial judge has noted deficiencies in Idaho's DUI statute and has questioned the reasoning, if not the result, of the *Brown* decision. *See* Redman, *A Message from the Dead, Part I,* 29 THE ADVOCATE 5 (Idaho State Bar, Feb. 1986).

by a blood-alcohol content of .10%, even though some individuals may exhibit few outwardly visible symptoms of intoxication at that level. AMERICAN MEDICAL ASS'N, ALCOHOL AND THE IMPAIRED DRIVER 146 (1970), *cited in State v. Clark,* 35 Or.App. 851, 583 P.2d 1142, 1148 (1978) (Johnson, J., dissenting). Consequently, many states have legislated directly against driving with a blood-alcohol content of .10%, some defining it as a separate offense and some treating it as driving under the influence per se. *See State v. Ulrich,* 17 Ohio App.3d 182, 478 N.E.2d 812 (1984) (classifying statutes in several states); Annot., 16 A.L.R.3d 748, § 11 (1985 Supp.). Both approaches embody a determination of fact and policy well within a legislature's constitutional competency—a determination that drivers with blood-alcohol levels of .10% or higher pose unacceptable risks to society. *Erickson v. Municipality of Anchorage,* 662 P.2d 963 (Alaska Ct.App.1983) (Singleton, J., concurring).

Idaho's choice of the per se approach is revealed by examining the 1983 statute as a whole. Subsection (1), like any statutory provision, must be construed with other provisions of the entire statute. *E.g., Umphrey v. Sprinkel,* 106 Idaho 700, 682 P.2d 1247 (1983). Subsection (2) demonstrates that the Legislature did not intend to make driving with a blood-alcohol level of .10% an offense wholly separate from driving "under the influence." This subsection provides in part that if a motorist submits to a blood-alcohol test at the request of a police officer, and if the test shows a blood-alcohol level less than .10%, the motorist is shielded from *any* prosecution under sub-

section (1).[2] No purported distinction is articulated between a prosecution for driving "under the influence" and a prosecution for driving with a proscribed blood-alcohol level. The only apparent exception to the shield erected by subsection (2) is one provided in subsection (3), which allows prosecution where intoxication has resulted from a combination of alcohol, drugs or other substances.

The 1983 statute also must be construed *in pari materia* with other statutes relating to the same subject matter. *E.g., Union Pacific R. Co. v. Board of Tax Appeals,* 103 Idaho 808, 654 P.2d 901 (1982). Here, the blood-alcohol test specified in I.C. § 49–1002 is one authorized by Idaho's "implied consent" law. In 1983 that law was codified, and substantially amended, as I.C. § 49–352. It now appears, with further revisions, as I.C. § 18–8002. *See* 1983 Idaho Sess. Laws (Ex.Sess.) ch. 3, § 9, pp. 15–16; 1984 Idaho Sess. Laws ch. 22, §§ 1 and 2 pp. 27–28. The 1983 statute provided, in pertinent part, as follows:

(1) Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to an evidentiary test for alcohol concentration as defined in section 49–1102, Idaho Code, *provided that such test is administered at the request of a police officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances,* and in accordance with the rules and regulations es-

---

**2.** The 1983 statute does not explicitly recognize the conceptual difference between a "true" blood-alcohol level and the level measured by a test. Subsection (1) simply refers to blood-alcohol content "as shown by" a test. However, when the statute was recodified as I.C. § 18–8004 in 1984, subsection (2) was expanded to provide that a court might determine that a test was "unreliable or inadmissible." In such event the defendant—like a defendant who took no test at all—could "be prosecuted for driving ... under the influence ... on other competent evidence." This amendment raises questions as

to whether the shield provided by a test result less than .10% can be pierced by showing that the test was unreliable, and whether a motorist can demand a blood-alcohol test. *Compare State v. Hayes,* 108 Idaho 556, 700 P.2d 959 (Ct.App.1985) (holding that the police were not *required* to administer a test under the pre-1983 statute). However, where—as here—the test result is .10% or higher, these questions need not be addressed. We leave them to be decided in other cases, upon proper sets of facts, unless the Legislature in the meantime furnishes appropriate clarifications.

tablished by the Idaho department of law enforcement. [Emphasis added.]

This section again reveals a legislatively perceived nexus between a motorist's blood-alcohol level and the influence of alcohol upon his ability to drive safely. A police officer must have "reasonable cause," based upon the motorist's operation of a vehicle or upon other observable symptoms of intoxication, before he may administer the test specified in I.C. § 49–1102. This predicate relationship is inconsistent with any notion that the Legislature intended to treat a motorist's blood-alcohol level and the influence of alcohol as wholly separate offenses.

Moreover, when construing a statute, a court should give the language a sensible interpretation. Absurd or unreasonable consequences must be avoided. E.g., Curtis v. Harmon Electronics, Inc., 575 P.2d 1044 (Utah 1978). Here, several practical considerations militate against construing I.C. § 49–1102 as requiring the state to choose between two entirely separate offenses. First, when a police officer prepares a complaint, he does not always know whether a blood-alcohol test will be administered. In some cases the tests are administered by other officers, after the complaining officer has relinquished custody of the motorist, either because the complaining officer did not have the necessary testing equipment or because the motorist, having initially refused a test, later changes his mind. Second, even if the complaining officer administers a test, some types of testing equipment yield a tentative or approximate result that must be confirmed more precisely in a laboratory. Finally, the police officer, a prosecutor or a judge might determine that a test result of .10% or higher has been obtained improperly because of noncompliance with statutory procedures, scientific defects in the testing methodology, malfunctions of

the equipment, or other errors. We find nothing in the 1983 statute, even before it was amended in 1984 as mentioned at footnote 2, indicating that the Legislature intended to bar the state in such cases from proving the influence of alcohol with other competent evidence.

We hold that I.C. § 49–1102, as enacted in 1983, does not create two wholly separate offenses based upon a purported distinction between blood-alcohol content and the influence of alcohol. Rather, we hold that the statute defines a single offense—driving under the influence of alcohol—which may be established per se by proving a blood-alcohol level of .10% or higher, or which may be established by proving the influence of alcohol with circumstantial evidence of impaired driving ability or other observable symptoms of intoxication. Either method of proof is permissible; neither of them is exclusive.[3] Accordingly, we conclude that evidence of Knoll's blood-alcohol test, showing a level of .25%, would have been admissible at trial upon the complaint charging her with driving "under the influence."

## II

We next consider Knoll's contention that the test result should have been excluded because the state was not prepared to offer supplementary evidence showing how the result would "relate back" to the time when the sheriff's deputy stopped her automobile. Knoll invites our attention to a written stipulation between the prosecutor and defense counsel, reciting that the state's expert witness, if called to testify at a trial, would have stated that there were "too many variables involved to permit [him] to 'extrapolate back' and accurately determine [Knoll's] blood-alcohol content

3. In some cases, the presence or absence of observable symptoms of intoxication has been held admissible to challenge or to confirm the accuracy of a blood-alcohol test result. E.g., Byrne v. State, 654 P.2d 795 (Alaska Ct.App. 1982); State v. Swarengin, 12 Or.App. 290, 506 P.2d 729 (1973). The instant case does not require us to decide that question. However, we note that such evidence would not be probative for this purpose unless an adequate foundation were laid to show a correlation between the alleged blood-alcohol level and the likely manifestation of specific symptoms. See State v. Clark, 583 P.2d at 1145.

[when she was stopped 47 minutes earlier]."

In *State v. Sutliff,* 97 Idaho 523, 547 P.2d 1128 (1976), our Supreme Court, construing a predecessor to the 1983 statute, held such a foundational showing was unnecessary. Idaho Code § 49–1102 then provided that a blood-alcohol level of .08% or higher "at the time of the alleged offense" gave rise to a rebuttable presumption that the motorist was under the influence of alcohol. The Supreme Court interpreted this language to mean that the blood-alcohol test was statutorily deemed to relate back to the alleged offense "for purposes of applying the statutory presumption." *Id.* at 525, 547 P.2d at 1130. As a second basis of its decision, the Court added that any lapse of time between operation of the motor vehicle and administration of the test would not bar admission of the test result; rather, it would simply affect the weight ascribed to the evidence.

*Sutliff's* first rationale arguably conflicts with the second. If a test result relates back by operation of statute, there should be no occasion for a trier of fact to give it diminished weight due to the passage of time.[4] Moreover, Knoll argues that both of *Sutliff's* rationales are limited to the statute construed in that case, and do not extend to a per se statute like the one enacted in 1983. However, we believe that *Sutliff's* second rationale does not turn upon the particular nature of the statute. The lapse of time between an alleged offense and the administration of a blood-alcohol test has been held to affect the weight of the evidence, not its admissibility, regardless of whether a blood-alcohol level of .10% is accorded per se or presumptive effect. *E.g., Fuenning v. Superior Court, County of Maricopa,* 139 Ariz. 590, 680 P.2d 121 (1983) (per se statute); *State v. Bence,* 29 Wash.App. 223, 627 P.2d 1343 (1981) (presumptive statute).

■ We agree with these decisions. It must be remembered that in order to apply the per se provision of Idaho's 1983 statute, the judge or jury need not determine a defendant's blood-alcohol content with precision. Rather, the trier of fact need only determine whether the state has proven, beyond a reasonable doubt, that the blood-alcohol content was at least .10%. In making this determination, the trier of fact must weigh all of the evidence. A time lapse in administering the test is one factor to consider in this weighing process.[5]

The only state espousing a contrary view is Vermont, where the Supreme Court has held that expert testimony must relate the test result back to the time of the alleged offense. *E.g., State v. Rollins,* 141 Vt. 105, 444 A.2d 884 (1982). However, the Vermont Supreme Court has been careful to note that such additional testimony is necessary only to obtain a conviction based upon the statutory effect accorded to a blood-alcohol level of .10% or higher; it is not a foundational requisite for the admissibility of such evidence. *State v. Dacey,* 138 Vt. 491, 418 A.2d 856, 860 (1980). Indeed, even if such a showing is not made,

---

4. The 1983 statute invites a similar observation. As we have seen, the statute refers to a blood-alcohol result "as shown by" the test. If *Sutliff's* first rationale were strictly applied to this language, the statute might be construed to mean that a motorist is guilty of driving under the influence in every instance where a blood-alcohol test yields a result of .10% or higher—or that the motorist is shielded from prosecution in every instance where the result is lower than .10%—regardless of how untimely the test might be. Because we adopt *Sutliff's* second rationale, we avoid this rigid and sweeping interpretation of the statute.

5. The timing of a test may affect its accuracy. In *State v. Turner,* 94 Idaho 548, 494 P.2d 146

(1972), the Supreme Court referred to expert testimony that a motorist's blood-alcohol content would reach a "peak" some 45 to 60 minutes after alcohol was consumed and would decline thereafter at a rate of .01% to .02% per hour. Such time frames may vary according to a host of individual circumstances. Despite these variations, some states accord per se effect to all valid blood-alcohol test results of .10% or higher if they are obtained within legislatively designated time periods, such as two, three or four hours. *See cases cited in State v. Ulrich,* 478 N.E.2d at 822. Idaho's statute provides no time guidelines; rather, it seemingly adopts an ad hoc approach, leaving the question of timeliness to the trier of fact in each case.

the fact that a test was conducted and that it disclosed the presence of alcohol in the motorist's blood may be considered, together with other evidence of intoxication, in determining whether the motorist was "under the influence" of alcohol. *State v. Dumont,* 499 A.2d 787 (Vt.1985).

■ We conclude in this case that the lapse of 47 minutes from commission of the alleged offense until administration of the blood-alcohol test did not trigger a foundational requirement that the test result be related back with supplementary evidence. The test result clearly was relevant to determining guilt. Being relevant, the evidence was admissible and was entitled to whatever weight a judge or jury might have given it if the case had been tried. We conclude that the magistrate did not err by denying Knoll's motion to exclude the evidence.

The decision of the district court, upholding the judgment of conviction, is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.