725 P.2d 202

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Donald R. BREED,
Defendant-Appellant.**

**No. 16159.**

Court of Appeals of Idaho.

Sept. 8, 1986.

Eugene L. McCoy, Pocatello, for defendant-appellant.

Jim Jones, Atty. Gen., by Lynn E. Thomas, Sol. Gen., and Michael A. Henderson (argued) Boise, for plaintiff-respondent.

BURNETT, Judge.

This appeal poses an equal protection challenge to Idaho statutes authorizing suspension of driving privileges. Idaho Code § 18–8002 provides that if a motorist refuses a lawful request to take a blood-alcohol test, his driving privileges must be suspended for 120 days. Idaho Code § 18–8005 provides that if a motorist is convicted of driving under the influence of alcohol, his driving privileges will be suspended for a period determined by the court; however, the court is authorized to permit limited driving for employment or family health needs during such suspension. Today we are asked to decide whether the constitutional guaranty of equal protection is offended by allowing a person convicted of DUI to receive limited driving privileges that are unavailable to a motorist who refuses the blood-alcohol test. For reasons explained below, we believe the statutes in question may present problems of interpretation, but we do not find them to be constitutionally infirm.

The facts essential to our opinion are undisputed. Donald R. Breed was arrested

in Blackfoot and charged with driving under the influence of alcohol. At police headquarters the arresting officer asked Breed to take a blood-alcohol test. Breed was informed in writing that refusal to take the test would lead to suspension of his driving privileges. Nevertheless, he refused. The officer seized his driver's license and forwarded it to the magistrate division of the district court, together with an affidavit of refusal.

When Breed was arraigned on the DUI charge, he requested a hearing for the purpose of showing cause why he had not taken the blood-alcohol test. His request was granted and a hearing was conducted. The magistrate found that the test properly had been requested and that suspension for refusal was mandatory under I.C. § 18-8002. The magistrate also denied a motion for limited driving privileges, noting that section 18-8002, unlike section 18-8005, does not provide for such privileges during suspension. The magistrate rejected Breed's argument that failure to allow limited privileges violated his constitutional right to equal protection of the laws.

Breed appealed to the district court. While the appeal was pending he pled guilty to the DUI charge. The magistrate imposed a sentence consisting of a fine, probation and compulsory participation in a rehabilitative program. The magistrate prescribed no period of license suspension under section 18-8005. Subsequently, the district court upheld the magistrate's order suspending Breed's license, and allowing no limited driving privileges, under section 18-8002. This appeal followed.

I

Before addressing the equal protection issue, we observe that an uneasy relationship exists between sections 18-8002 and 18-8005. These statutes do not tell us whether suspension for refusing a test is independent from, concurrent with or superseded by any period of suspension later ordered upon conviction for DUI. If the two types of suspension were independent, a defendant would be required to finish his suspension under section 18-8002 before starting the suspension under section 18-8005. If the two suspensions were concurrent, they would run simultaneously but the court's authority to allow limited driving privileges under section 18-8005 arguably would be stayed until the suspension under section 18-8002 had expired. Finally, if suspension under section 18-8002 were superseded by the court's decision regarding suspension under section 18-8005, any post-conviction dispute over limited driving privileges would be moot.

Neither party to the instant appeal has fully briefed or argued the relationship between the statutes. However, by continuing to challenge the denial of limited driving privileges under section 18-8002, even though a judgment of conviction has been entered, Breed evidently takes the position that this case has not been mooted by the judgment. He appears to concede that a suspension under section 18-8002 remains binding despite the magistrate's decision to impose no period of suspension upon conviction under section 18-8005. The state has taken a similar position, arguing that if we affirm the district court's order upholding the suspension without limited privileges under section 18-8002, we should remand the case for enforcement of such suspension.

■ Thus, both parties seem implicitly to agree that suspension for refusal under section 18-8002 may continue beyond entry of a judgment. The facts of this case—where no period of suspension was imposed by the judgment—do not require us to decide whether a suspension under section 18-8002 would run independently from, or concurrently with, a suspension upon conviction under section 18-8005. Accordingly, for the purpose of this case, we go no farther than the parties themselves have gone. We hold narrowly that an order of suspension for failure to take a blood-alcohol test under section 18-8002 remains in effect despite a subsequent judgment containing no period of suspension under section 18-8005.

## II

We now turn to the question whether a defendant is constitutionally entitled to seek limited driving privileges at any time during his suspension under section 18–8002. Because this issue is purely one of law, the decisions below are subject to a standard of free review. *Pullman-Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Linn v. North Idaho Medical Service Bureau*, 102 Idaho 679, 638 P.2d 876 (1981).

The equal protection clauses of the state and federal constitutions embrace the principle that all persons in like circumstances should receive the same benefits and burdens of the law. Equal protection issues focus upon classifications within statutory schemes that allocate benefits or burdens differently among the categories of persons affected. *State v. Reed*, 107 Idaho 162, 686 P.2d 842 (Ct.App.1984). The first step in an equal protection analysis is to identify the classification under attack. The second is to articulate the standard under which the classification will be tested. The third is to determine whether the standard has been satisfied. *Tarbox v. Tax Commission*, 107 Idaho 957, 695 P.2d 342 (1984).

### A

In this case, identifying the classification is a perplexing task. Breed argues that the classification at issue is one that separates persons who are suspended for refusing the blood-alcohol test from persons who are suspended upon conviction for DUI. The difficulty with this proposed classification is that it embraces elusive and overlapping categories. The groups comprised of persons suspended for refusing tests and of persons convicted for DUI are neither contemporaneous nor mutually exclusive. A defendant might be suspended under section 18–8002 for refusing a test and later be suspended again under section 18–8005 when convicted. Some defendants, like Breed, might be suspended for refusing a test and later be convicted—but not be suspended upon conviction. Others may fall partly within and partly outside the proposed classification. Thus, a defendant may refuse a test but be acquitted, or he may take a test and be convicted. In short, we find that Breed's proposed classification does not contain a well-defined set of categories.

### B

Even if we accepted the amorphous classification urged by Breed, the next question would be what equal protection standard to apply. There are three possibilities.

The most rigorous standard, "strict scrutiny," is limited to schemes creating "suspect" classes based on race, national origin or alienage, or infringing upon a "fundamental" right such as voting, procreation, or constitutional safeguards for persons accused of crimes. *Newlan v. State*, 96 Idaho 711, 535 P.2d 1348 (1975). At the other extreme, the least rigorous standard is the "rational basis" test. This standard, customarily applied to social and economic legislation, requires only that a statutory scheme classify persons in a manner rationally related to a legitimate governmental objective. *E.g., Twin Falls Clinic & Hospital Building Corp. v. Hamill*, 103 Idaho 19, 644 P.2d 341 (1982). Under the "rational basis" standard, our Supreme Court has held that a classification will pass equal protection muster "if there is any conceivable set of facts which will support it." *State v. Bowman*, 104 Idaho 39, 41, 655 P.2d 933, 935 (1982). Although we have said that this formulation of the rational basis standard is unduly lenient, *State v. Reed, supra*, it is a formulation to which our Supreme Court has chosen to adhere.

As explained in *Reed*, the wide gap between the strict scrutiny test and rational basis test has encouraged the development of various intermediate tests. Generally speaking, such tests require a classification not merely to bear a rational relationship to a conceivable government objective, but to bear a substantial relationship

to a specifically identifiable legislative end. Intermediate tests are applicable to cases where especially important (though not "fundamental") interests are at stake, where unusually sensitive (though not "suspect") classes have been created, or where a statutory scheme "otherwise blatantly discriminates." *State v. Reed,* 107 Idaho at 170, 686 P.2d at 850 (Ct.App.1984).

In this case, we find no "suspect" classes or "fundamental" interests warranting application of the strict scrutiny standard. Neither do we find that sections 18–8002 and 18–8005 create unusually sensitive classes or trench upon especially important interests. Rather, the classes and interests are similar to those generally affected by social and economic legislation. Finally, we do not think the statutes are "blatantly discriminatory." That phrase, first used in *Jones v. State Board of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), connotes to us a case where the Legislature has created two or more plainly discernible classes of similarly situated persons and purposely has granted one class a benefit, or has exempted it from a burden, that otherwise logically would flow to all persons embraced by the scheme. This case does not fit that description. As we have noted, the classes here are not well defined. The differential treatment of persons suspended for refusing tests and persons convicted for DUI arises from an uneasy relationship between two statutes, not from a clearly evinced legislative purpose to discriminate. Accordingly, we hold that an intermediate equal protection standard should not be employed here. The applicable standard is the rational basis test.

### C

▮ The purpose of section 18–8002, as we read it, is to provide an incentive for motorists to cooperate in determining levels of blood-alcohol content by a reasonably precise scientific method. This purpose reflects our Legislature's determination that drivers with blood-alcohol levels of .10% or higher represent intolerable hazards to traffic safety. *See State v. Knoll,* 110

Idaho 678, 718 P.2d 589 (Ct.App.1986). The state's interest in traffic safety, and the legitimacy of its objective of detecting alcohol-impaired drivers, cannot be gainsaid. *See generally State v. Ankney,* 109 Idaho 1, 704 P.2d 333 (1985). This objective is served rationally by imposing a sanction of absolute suspension upon motorists who refuse to be tested. Although it could be argued that conviction for DUI ought to carry an equally rigorous suspension, it is for the Legislature, not the courts, to determine the relative degrees of opprobrium attached to these differing circumstances. In any event, a judgment of conviction, unlike refusal to take a test, carries a whole host of potential sanctions—including fines, confinement and other punitive or corrective measures—in addition to license suspension. It is not irrational to allow limited driving privileges in conjunction with such other sanctions.

We conclude that the rational basis test has been satisfied. Breed's right to equal protection has not been impermissibly abridged. Similar conclusions may be found in cases from other jurisdictions, where constitutional attacks have been brought against suspensions for refusing blood-alcohol tests. *See Murray v. Thorneycroft ex rel. Arizona,* 131 Ariz. 156, 639 P.2d 346 (App., 1981); *Walker v. Department of Motor Vehicles,* 274 Cal.App.2d 793, 79 Cal.Rptr. 433 (1969); *DeScala v. Motor Vehicle Division,* 667 P.2d 1360 (Colo.1983); *In re McCain,* 84 N.M. 657, 506 P.2d 1204 (1973); *Gableman v. Hjelle,* 224 N.W.2d 379 (N.D.1974); *Heer v. Department of Motor Vehicles,* 252 Or. 455, 450 P.2d 533 (1969).

Accordingly, we affirm the district court's order, which upheld the magistrate's denial of limited driving privileges under I.C. § 18–8002. The case is remanded for enforcement of the remaining period of suspension, if any.

WALTERS, C.J., and SWANSTROM, J., concur.