744 P.2d 92

**In the Matter of The Suspension of the Driver's License of Monty W. GRIFFITHS, Defendant.**

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Monty W. GRIFFITHS, Defendant-Appellant.**

No. 16445.

Supreme Court of Idaho.

Oct. 1, 1987.

authority for the offense of driving under the influence of alcohol may request the arrestee to submit to a blood-alcohol content test; (2) whether there existed probable cause to stop defendant and request him to take a blood test; (3) whether defendant was properly advised of the consequences of failing to submit to a blood test; (4) whether a defendant who fails to submit to a requested blood-alcohol content test but states he will submit to another type of evidentiary test has refused a test within the meaning of the implied consent statute; (5) whether a fear of needles is, as a matter of law, insufficient to show cause why a properly requested blood test was refused; and, finally, (6) whether venue was proper in Bannock County.[1] We affirm all but issue (5) and vacate that portion of the magistrate's decision which rejected, as a matter of law, fear of needles as a cause for refusal.

### I.

Following the seizure of his driver's license, Monty W. Griffiths timely requested an evidentiary hearing to show cause why his license should be returned. *See* I.C. § 18-8002(4)(b). The hearing revealed the following facts:

On September 22, 1985, two Indian police officers noticed a green vehicle traveling at an excessive rate of speed on the Fort Hall Indian Reservation. They followed the vehicle and clocked it doing approximately 70 mph in a 45 mph zone. They observed the vehicle cross the fog line twice and the yellow center line once while driving on straight highway.

The vehicle was being driven by the defendant, Monty W. Griffiths. Larry Van Sickle, one of the Indian police officers, testified that upon stopping the vehicle he observed that defendant's eyes were bloodshot and his speech was erratic. Van Sick-

John B. Kugler, Pocatello, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., argued, for plaintiff-respondent.

**DONALDSON, Justice.**

This is a civil appeal from an order of the magistrate division suspending defendant's driver's license pursuant to Idaho's implied consent statute, I.C. § 18-8002. Defendant-appellant raises a host of issues: (1) whether a city police officer who effects an arrest outside of the territorial limits of his

---

1. Defendant also raises an issue concerning alleged hearsay which was allowed into evidence over his objection. The testimony objected to was Officer Hayball's statement that the Bannock County dispatcher had said other law enforcement agencies were unavailable because they were preoccupied with emergencies. We do not address the question as to whether this statement was offered for the truth of the matter asserted or whether it was harmless error, because defendant did not raise this issue on appeal to the district court. *Gordon v. Noble*, 109 Idaho 1048, 712 P.2d 749 (Ct.App.1986).

le also noticed a strong odor of alcohol. Defendant was then asked to step from the vehicle and perform the standard battery of field dexterity tests. Van Sickle testified that defendant failed all of these tests.

Because defendant was not a member of the Sho-Ban Indian tribes, Bannock County authorities were called to arrest defendant for driving under the influence of alcohol. County and state law enforcement personnel were tied up with emergencies, so several minutes later two officers from the city of Chubbuck, Idaho, arrived. One of these officers, Bill Hayball, testified at defendant's show cause hearing that, upon arriving at the scene, he smelled a strong odor of beer on defendant's breath and observed that defendant's eyes were "very glassy." Hayball was informed by the Indian police officers that Griffiths had been speeding and weaving in his lane. Hayball then asked defendant to perform a series of field dexterity tests, which Hayball testified defendant failed. Defendant was taken into custody.

While transporting defendant to a nearby law enforcement facility, Hayball asked defendant if he would take the Intoximeter 3000, which is the standard breath test used to determine alcohol concentration in the blood. Hayball testified that defendant replied, "No, I am not taking your test." Shortly thereafter, a dispatcher notified Hayball that the Intoximeter 3000 was not functioning and that a blood test would have to be performed. Hayball asked defendant if he had a preference for any particular hospital, but defendant did not reply.

Defendant was then driven to Pocatello Regional Hospital, where he was asked to sign a consent form for the withdrawal of blood. Defendant refused, though he was advised that a refusal would result in the suspension of his driver's license. Defendant was not, however, advised that he could have additional tests done at his own expense. Hayball did not have with him a refusal form patterned after I.C. § 18–8002(3), the implied consent statute, so he drove defendant to the Pocatello Police Department where he read defendant the department's standard form[2] which advised defendant of the information regarding refusal required by I.C. § 18–8002(3). Hayball testified that defendant thereupon refused to submit to a blood test. Apparently, at the Pocatello Police Department

---

**2.** The department's form included the following particulars:

"(1) I HAVE REASONABLE GROUNDS TO BELIEVE THAT YOU HAVE BEEN DRIVING (OR THAT YOU WERE IN PHYSICAL CONTROL OF) A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL, DRUGS OR OTHER INTOXICATING SUBSTANCE.

"(2) YOU ARE REQUIRED BY STATE LAW TO SUBMIT TO AN EVIDENTIARY CHEMICAL TEST TO DETERMINE THE ALCOHOL CONCENTRATION OF YOUR BLOOD.

"(3) YOU DO NOT HAVE THE RIGHT TO CONSULT WITH AN ATTORNEY BEFORE SUBMITTING TO AN EVIDENTIARY TEST FOR ALCOHOL CONCENTRATION.

"(4) IF YOU REFUSE MY OFFERED TEST, I AM REQUIRED BY LAW TO SEIZE YOUR LICENSE OR PERMIT AND FORWARD IT TO THE COURT, AND A TEMPORARY DRIVING PERMIT WILL BE ISSUED.

"(5) UPON RECEIPT OF MY SWORN STATEMENT OF THE CIRCUMSTANCES OF THE REFUSAL, THE COURT SHALL SUSPEND YOUR DRIVING PRIVILEGES FOR 120 DAYS.

"(6) YOU HAVE THE RIGHT TO FILE A WRITTEN REQUEST WITH THE COURT WITHIN (7) DAYS, FOR A HEARING BEFORE THE COURT TO SHOW CAUSE WHY YOU DID NOT TAKE OR SUCCESSFULLY COMPLETE THE TEST. IF YOU FILE THE WRITTEN REQUEST, THE HEARING MUST BE SCHEDULED WITHIN 30 DAYS OF THE REQUEST. THE HEARING SHALL BE LIMITED TO THE QUESTION OF WHY YOU DID NOT TAKE THE TEST, AND THE BURDEN OF PROOF SHALL BE UPON YOU.

"(7) AFTER SUBMITTING TO THE TEST REQUESTED BY ME, YOU MAY, WHEN PRACTICABLE, HAVE ADDITIONAL TESTS MADE BY A PERSON OF YOUR OWN CHOOSING, AND AT NO EXPENSE TO THE STATE, COUNTY OR CITY. THE FAILURE OR INABILITY TO OBTAIN AN ADDITIONAL TEST OR TESTS BY YOU SHALL NOT PRECLUDE THE ADMISSION OF AN EVIDENTIARY TEST FOR ALCOHOL CONCENTRATION TAKEN AT MY DIRECTION UNLESS THE ADDITIONAL TEST WAS DENIED BY ME. YOUR REFUSAL TO TAKE MY TEST CAN BE COMMENTED ON AND IS ADMISSIBLE IN COURT AT TRIAL.

"(8) DO YOU UNDERSTAND WHAT I HAVE TOLD YOU?

"(9) WILL YOU SUBMIT TO THE TEST OFFERED BY ME?"

there was an Intoximeter 3000 in the same room where defendant was being held and advised, and it is uncontroverted that defendant asked what the machine was and, upon learning what it was, said he would take that test. However, the machine was not functioning and defendant was so informed.

Defendant testified at his show cause hearing that he did not know the Intoximeter 3000 was inoperative when he requested that test. Officer Hayball testified the volume of police radio was turned up loud and that defendant should have heard the dispatcher's message regarding the Intoximeter 3000. Hayball also testified he advised defendant earlier that the Intoximeter 3000 was not working, and that they would have to go to a hospital to have a blood test done.

Defendant testified that the reason he refused to submit to the blood test was a fear of needles. Early on in the hearing, defendant testified that he did not articulate to the hospital staff or Officer Hayball that his reason for refusal was a fear of needles. Later, however, when he was called as a rebuttal witness, defendant testified that he did, in fact, articulate his fear of needles to others. His fear of needles, defendant said, resulted from an earlier experience where he had undergone surgery several times. Defendant's mother testified to the same effect. Finally, defendant testified that he requested a urine test, though there appears to be some dispute as to whether an actual test was requested or whether defendant had merely requested to use the restroom.

Upon hearing the evidence, the magistrate, ruling from the bench, found that there was probable cause to stop defendant, that defendant had been properly advised of the consequences of a refusal, that defendant had refused to submit to a blood-alcohol content test, and that defendant had failed to show cause why he had refused to take the test. The magistrate made no findings of fact regarding whether defendant had a fear of needles and whether this fear was articulated to Officer Hayball; instead the court held that fear of needles, as a matter of law, is not cause for refusing a blood-alcohol test. Defendant appealed to the district court which affirmed the judgment below. Because the district court was acting in its appellate capacity, on appeal to this Court we review the record before the magistrate independently of the district court decision. *First Interstate Bank of Idaho, N.A. v. West,* 107 Idaho 851, 852–53, 693 P.2d 1053 (1984).

## II.

Before addressing the particular issues raised by this appeal, a brief review of Idaho's implied consent statute is in order.

In 1984, the Idaho Legislature enacted I.C. § 18–8002, which superceded I.C. § 49–352. *See* 1984 Idaho Sess.Laws ch. 22, pp. 27–28. Though the implied consent law was moved from the "Motor Vehicles" title of the Idaho Code to the "Crimes and Punishments" title, the legislature has indicated in subsequent amendments to section 18–8002 that a suspension for failure to submit to a blood-alcohol test is a civil proceeding separate and apart from any related criminal proceedings. *See* 1987 Idaho Sess.Laws ch. 220, § 1, p. 469. Amendments in 1987 to section 18–8002 have, *inter alia*, increased the suspension period to 180 days for refusing a properly requested test, see I.C. § 18–8002 (Supp. 1987),[3] but the earlier version of I.C. § 18–8002 controls the present case since the acts in question occurred in 1985. The 1984 form of the statute, which applies to the instant case, reads in pertinent part:

> **"18–8002. Test of driver for alcohol concentration.—**(1) Any person who drives or is in actual physical control of a motor vehicle in this state shall be deemed to have given his consent to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances as defined in section 18–8004, Idaho Code, provided that such test is administered at the request of a police

---

**3.** The 1987 amendments may be found at 1987 Idaho Sess.Laws ch. 122, § 1, pp. 248–49; ch. 132, § 1, pp. 263–64; and ch. 220, § 2, pp. 469–70.

officer having reasonable grounds to believe that person has been driving or in actual physicial control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances.

"...

"(3) At the time an evidentiary test for concentration of alcohol, drugs or other intoxicating substances is requested, the person shall be informed that if he refuses to take the test:

"(a) His license will be seized by the police officer and a temporary permit will be issued;

"(b) He has the right to request a hearing within seven (7) days to show cause why he refused to take the test;

"(c) If he does not request a hearing or does not prevail at the hearing, his license will be suspended absolutely for one hundred twenty (120) days; and

"(d) After submitting to the test he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

"(4) If the motorist refuses to take the evidentiary test after the information has been given in accordance with subsection (3) above:

"(a) His license or permit shall be seized by the police officer ...;

"(b) A written request may be made within seven (7) calendar days for a hearing before the court; .... The hearing shall be limited to the question of why the defendant did not take the test, and the burden of proof shall be upon the defendant; the court shall suspend all his driving privileges immediately for one hundred twenty (120) days unless it finds that the police officer did not have probable cause to stop and request him to take the test or that the request violated his civil rights; ..."

Under this statute, once a license has been seized it is the driver-defendant who bears the burden of proving that his license

must be reinstated. A driver-defendant may prevail by proving any of the following:

(1) that the police officer stopping defendant did so without probable cause;

(2) that defendant was not requested by a police officer to submit to an evidentiary test;

(3) that the requesting police officer did not have "reasonable grounds" or "probable cause" to believe that defendant had been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances;

(4) that the request violated defendant's civil rights;

(5) that defendant was not advised of the information regarding refusal mandated by I.C. § 18–8002(3);

(6) that defendant did not refuse to submit to the requested evidentiary test; or

(7) that, although defendant refused the requested evidentiary test, he did so with sufficient cause.[4]

*See* I.C. § 18–8002.

We turn now to the specifics of the instant case.

### III.

■ Defendant's first argument is that the police officer stopping him did so without probable cause. This contention merits little discussion. It is clear that exceeding the speed limit and repeatedly failing to stay within one's traffic lane furnishes probable cause to stop a motor vehicle. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979) (traffic offenses give police probable cause to stop vehicle); *Stream v. Heckers*, 184 Colo. 149, 519 P.2d 336 (1974) (crossing double yellow line late at night furnished probable cause to stop vehicle).

---

**4.** The argument that the legally sufficient grounds for refusal are limited to a lack of probable cause or a violation of civil rights is discussed and rejected under VIII, *infra*.

## IV.

Next, defendant asserts that his arrest was invalid because Officer Hayball was acting extraterritorially and without authority.[5] It is urged that a driver's license may not be suspended under section 18–8002 if the arrest was invalid. Defendant's theory here is based upon the general rule that where a police officer makes an arrest in another law enforcement agency's jurisdiction without that agency's consent, the validity of the arrest is determined by whether the police officer, if a private person, could have so arrested the individual. *See generally,* 5 Am.Jur.2d *Arrest* § 50, at 742 (1962). This rule is codified in section 67–2337 of the Idaho Code, which provides that peace officers may perform their functions and duties extraterritorially if they are so engaged "in response to a request for law enforcement assistance from the chief law enforcement officer of another city or political subdivision or his designee."

Defendant argues that Officer Hayball, being a Chubbuck police officer, was without section 67–2337 authority since his assistance was not requested by the "chief law enforcement officer ... or his designee" of either Bannock County or the Fort Hall Indian Reservation. The arrest was invalid, the argument goes, because Hayball had no power to arrest defendant for a misdemeanor not committed in Hayball's presence. *See* I.C. § 19–603 (circumstances under which peace officer may make warrantless arrest) and I.C. § 19–604 (when a private person may arrest).

This argument fails, though, because driving under the influence of alcohol is treated as a felony for purposes of arrest. I.C. § 49–1109(a)(2). Thus, Hayball could have arrested defendant though the offense was not committed in his presence.

## V.

In an argument related to that discussed immediately above, defendant challenges whether there was a valid request to submit to a blood-alcohol test. First, defendant posits that since Officer Hayball arrested and detained him outside the territorial limits of the officer's authority, he was not a "police officer" within the meaning of the statute and, therefore, was not a person authorized to make a request to submit to a blood-alcohol test. We reject this narrow reading of the term "police officer" because it would lead to an absurd result. Officers outside of their jurisdiction and without section 67–2337 authority would be able to arrest, as would private persons, those committing the offense of driving under the influence, *see* I.C. §§ 49–1109(a)(2) and 19–604, but under the proffered narrow reading of "police officer," they would be powerless to request an evidentiary test to determine blood-alcohol content. It would be absurd to allow an intrusive measure such as an arrest and, yet, prohibit the lesser intrusion of requesting a blood-alcohol test. Absurd or unreasonable consequences must be avoided when construing statutes. *State v. Knoll,* 110 Idaho 678, 682, 718 P.2d 589 (Ct.App. 1986). Therefore, we reject this reading.

Second, defendant argues that he was not requested to submit to an evidentiary test by a police officer "having reasonable grounds to believe that [he was] driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances." I.C. § 18–8002(1). This position is untenable.

Hayball testified that he smelled alcohol on defendant's breath, that defendant's eyes were glassy, and that defendant failed all of the field dexterity tests. Further, Hayball had the benefit of Officer Van Sickle's observations and assessments regarding defendant's driving and level of intoxication. *State v. Ruhter,* 107 Idaho 282, 688 P.2d 1187 (1984). These facts establish probable cause or reasonable grounds under section 18–8002. *Mason v. State, Dept. of Law Enforcement,* 103 Ida-

---

**5.** A challenge to the legality of an arrest is not a challenge which pertains to the jurisdiction of the court to hear the matter before it. *Irwin v. State, Department of Motor Vehicles,* 10 Wash. App. 369, 517 P.2d 619 (1974).

ho 748, 653 P.2d 803 (Ct.App.1982) (reasonable grounds established by unsteady walking, odor of alcohol, and unsatisfactory performance of field dexterity tests). *Accord, State v. Gustafson,* 55 Hawaii 65, 515 P.2d 1256 (1973) (probable cause to suspect driving under the influence where officers smelled alcohol on driver's breath and driver unsteady on his feet).

### VI.

■ The next issue is whether defendant was properly advised of the information regarding refusal which is mandated by I.C. § 18–8002(3). The license of a driver who refuses to submit to a requested test will be reinstated if he can establish at the show cause hearing that he was not completely advised of his rights and duties under the statute. *Cf., State v. Rogers,* 37 Wash.App. 728, 683 P.2d 608, 611 (1984), *review denied,* 102 Wash.2d 1013 (1984). Here, when defendant was asked to submit to a blood test at the hospital, Officer Hayball did not inform defendant, as the statute mandates, that he could have additional tests made at his own expense. Therefore, the defendant's failure to cooperate at this point in time was not technically a "refusal" within the meaning of the statute. However, later, when the defendant was taken to the police department, Officer Hayball read the standard consent form to defendant which included all of the information rquired by section 18–8002(3). *See* n. 2, *supra.* After hearing this, defendant was asked whether he would submit to an evidentiary test and defendant refused. Therefore, we hold that defendant was properly advised regarding the refusal to submit to a requested blood-alcohol test.

### VII.

Next, it is contended that defendant did not refuse since he expressed a desire to take the inoperative Intoximeter 3000, and since he allegedly requested a urine test as well. We find these arguments groundless.

■ The choice as to the test which will be given is the police officer's. I.C. § 18–8004(1), Idaho's DUI statute, provides that driving under the influence may be proven "by analysis of [the driver's] blood, urine, or breath...." The Utah Supreme Court has interpreted similar "or" language as giving drivers the choice as to which evidentiary test will be taken. *See Ringwood v. State,* 8 Utah 2d 287, 333 P.2d 943 (1959). However, the "or" language they were referring to there was not in the DUI statute, but in the implied consent statute. Idaho's implied consent statute, I.C. § 18–8002, contains no such "or" language. Furthermore, Idaho's statute states that it is the police officer who is the one requesting the test. This would indicate that it is also the police officer who will determine the type of test which will be requested. Therefore, we hold that the choice as to which type of evidentiary test for concentration of alcohol, drugs or other intoxicating substances will be requested rests with the police officer, not the defendant. A contrary holding would require the many rural law enforcement agencies of this state to have readily available all three evidentiary tests, and this would be a burdensome requirement. Defendant was requested to submit to a blood test. He refused. That defendant may or may not have expressed a genuine desire to submit to a breath or urine test is of no moment. The choice was not his to make, and therefore, his conduct was a refusal.

### VIII.

Next, defendant argues that the magistrate court erred by holding as a matter of law that a fear of needles is not "cause" for refusing to submit to a properly requested blood-alcohol test. We note at the outset that an argument can be made that the only grounds for refusal under I.C. § 18–8002 are a lack of probable cause or a violation of defendant's civil rights. Subsection (4)(b) of I.C. § 18–8002 states that a defendant's driving privileges shall be suspended "unless [the court] finds that the police officer did not have probable cause to stop and request him to take the test or that the request violated his civil rights...." One might argue that *expressio unius est exclusio alterius* limits the

grounds for refusal. However, to so advocate one must ignore the rule that statutes are to be construed as a whole, "that all sections of the applicable statutes should be considered and construed together to determine the intent of the legislature; and that it is incumbent upon a court to give the statute an interpretation that will not in effect nullify it." *Magnuson v. Idaho State Tax Commission*, 97 Idaho 917, 920, 556 P.2d 1197, 1200 (1976) (citations omitted).

If we step back from subsection (4)(b)'s "unless without probable cause or violation of civil rights" language, which is quoted above, and view subsection (4) in its entirety along with subsection (3) of I.C. § 18–8002, it becomes clear that a lack of probable cause or a violation of civil rights are not the sole legally sufficient grounds for refusal. Subsection (4) begins by stating, "If the motorist refuses ... after the information has been given in accordance with subsection (3) ..." then the license shall be seized. It seems self-evident that the legislature has authorized the seizure of a license only where the defendant has refused a requested test after being properly informed. To construe the "unless" language of subsection (4)(b) narrowly would wipe away the effect of the first portion of subsection (4).

A narrow reading of subsection (4)(b) would also nullify the rights listed in subsection (3)—the rights which subsection (4) requires the police officer to inform the motorist about. For example, (3)(b) says a motorist has a right "to show cause why he refused," and (3)(d) says that a motorist has a right to have additional blood-alcohol tests performed at his own expense. If we read the "unless" language of subsection (4) too narrowly, the subsection (3) rights will have no remedies: a police officer could refuse a proper request by a motorist for additional tests and this conduct would not be grounds for refusal since it does not fit within the "probable cause" or the "civil rights" categories.

Finally, the now-repealed form of I.C. § 49–352, which we construed in *State v. Ankney*, 109 Idaho 1, 704 P.2d 333 (1985), and *State v. Tierney*, 109 Idaho 474, 708 P.2d 879 (1985), contained language similar to subsection 3(b) of I.C. § 18–8002:

"At the time an evidentiary test for alcohol concentration is requested, the person shall be informed that:

" ...

"(c) that he has the right to request a hearing before the court to show cause why he did not take or successfully complete the evidentiary test for alcohol concentration ... [and] that the hearing shall be limited to the question of why the defendant did not take the test, and that the burden of proof shall be upon the defendant...."

*Tierney, supra*, at 475 n. 1, 708 P.2d at 880 n. 1.

In *Ankney*, we rejected an argument that any reason for not submitting to a requested test is sufficient "cause." *Ankney, supra*, 109 Idaho at 6, 704 P.2d at 338. In *Tierney*, we upheld, under the "substantial competent, although conflicting evidence" standard of review, a lower court's determination that "cause" was not established by the evidence proffered by defendant alleging that refusal was justified because defendant was on medication and felt the outcome of the test might be affected by this fact. Both these cases recognize that the "show cause why he refused" language of I.C. § 49–352 had meaning in and of itself, and by itself established grounds for refusal. The legislature utilized this same language in I.C. § 18–8002(3), and we must presume it did so knowing the prior meaning which we attached to it. *First American Title Co. of Idaho, Inc. v. Clark*, 99 Idaho 10, 576 P.2d 581 (1978). Therefore, to hold today that the language of I.C. § 18–8002(3)(b) has no meaning of itself, would be contrary not only to the rule that a statute is to be construed to give effect to all of its provisions, *Chandler Supply Co., Inc. v. City of Boise*, 104 Idaho 480, 660 P.2d 1323 (1983), but would also run counter to the presumption that the legislature is cognizant of prior judicial interpretations of its enactments.

We decline to narrowly construe the "unless" language of I.C. § 18–

8002(4)(b), when the effect would be the nullification of other subsections of the statute. We therefore hold that a defendant may prevail at a I.C. § 18–8002 hearing by showing "cause" for his refusal. Construing "cause" language similar to that of subsection (3)(b), we have earlier held that it invisions something more than any reason. *Ankney, supra.* We apply the same reasoning to the statute at bar. Defendant must establish cause of a sufficient magnitude that it may be fairly said that a suspension of his license would be unjust or inequitable. Clearly, a demonstrated physical inability to perform the requested test would be sufficient cause.

Here, defendant refused a blood test and stated that nobody was going to stick him with any needles. He argues that this psychological inability to perform a requested test is sufficient cause. However, it is unclear from the record whether he specifically articulated at the time the blood test was refused that his reason for doing so was a fear of needles.

■ The magistrate did not make factual findings regarding whether defendant had a fear of needles and whether it was of such a magnitude that defendant had sufficient cause for refusal. By holding that fear of needles may never be sufficient cause for refusing a requested test, the magistrate committed error. Though the choice as to which evidentiary test will be requested rests with the police officer, a psychological inability to perform the requested test may, *if supported by the evidence*, establish sufficient cause for refusing the test. However, although a fear of needles may be sufficient cause, this cause must be articulated to the police officer at the time of refusal so the officer is given an opportunity to request a different test. We hold that a fear of needles may establish sufficient cause for refusing to submit to a blood test requested pursuant to I.C. § 18–8002 if the fear is of such a magnitude that as a practical matter the defendant is psychologically unable to submit to the test, *and* if the fear is sufficiently articulated to the police officer at the time of refusal so that the officer is given an opportunity to request a different test.

Here, the magistrate did not make a finding as to the existence of a fear of needles, resting instead upon legal grounds. Also, there is conflicting testimony from the defendant as to whether he merely stated that nobody was going to stick him with any needles, or whether he sufficiently articulated his fear of needles to Officer Hayball. The role of this Court is not to weigh cold records and find facts, so the case must be remanded for the trial court to perform the task.

### IX.

■ Finally, defendant challenges the jurisdiction of the magistrate court on venue grounds. I.C. § 5–402 provides:

"**5–402. Actions for penalties and against officers.**—Actions for the following causes must be tried in the county where the cause, or some part thereof, arose, subject to the like power of the court to change the place of trial:

"1. For the recovery of a penalty or forfeiture imposed by statute, ..."

A suspension of driving privileges pursuant to I.C. § 18–8002 is a "forfeiture imposed by statute." Therefore, the "action" or, more particularly, the hearing to show cause, may be held "in the county where the cause, *or some part thereof,* arose ..." I.C. § 5–402 (emphasis added). "Some part" of this cause arose in Bannock County where defendant refused to submit to a blood test to determine the alcohol content of his blood. The plaintiff also urges that even if the location of the initial traffic stop determines the venue of the suspension hearing, Bannock County is the correct venue because evidence in the record establishes the stop occurred at the intersection of Highway 91 and Edmo Road. Plaintiff argues that judicial notice of this fact may be properly taken and cites Rule 201 of our new Rules of Evidence. The district court, acting as an appellate court, did in fact take judicial notice of the fact that this intersection is located within Bannock County. However, we need not decide the judicial notice question because clearly the

evidence supports that defendant refused the blood test within Bannock County.

## X.

For the reasons stated above, we vacate that portion of the magistrate court's decision which ruled as a matter of law that a fear of needles may never be sufficient "cause" *for refusing to submit to a blood test.* The case is remanded on this point for the magistrate court to make factual determinations as to whether or not defendant did in fact have a fear of needles of such a magnitude that it was cause of refusal, and as to whether this fear was sufficiently articulated to Officer Hayball. The decision below is in all other respects affirmed.

Affirmed in part, vacated in part and remanded.

No costs or attorney fees on appeal.

BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, C.J., and BAKES, J., concur in all parts except VIII.

SHEPARD, Chief Justice, dissenting in part.

I dissent to Part VIII of the majority opinion.

The majority has held that a defendant may prevail at an I.C. § 18–8002 hearing by showing "cause" for his refusal to take a blood-alcohol test. I cannot agree.

I.C. § 18–8002 states in pertinent part: (1) Any person who drives or is in actual physical control of a motor vehicle in this state *shall be deemed to have given his consent to an evidentiary test* for concentration of alcohol, drugs or other intoxicating substances as defined in section 18–8004, Idaho Code, provided that such test is administered at the request of a police officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances. (Emphasis added.)

Thus, a motorist is under a statutory duty to consent to an evidentiary test when he has exercised his operating privileges, provided the requesting officer has reasonable grounds to believe that the motorist was driving while under the influence of an intoxicating substance. Whether the officer had reasonable grounds to justify the stop of the defendant is not at issue in this case, but rather whether a "fear of needles" is a sufficient cause to justify the defendant's refusal to take a blood-alcohol test.

The purpose of section 18–8002, ..., is to provide an incentive for motorists to cooperate in determining levels of blood-alcohol content by a reasonably precise scientific method. This purpose reflects our legislature's determination that drivers with blood-alcohol levels of .10% or higher represent intolerable hazards to traffic safety. *See State v. Knoll,* 110 Idaho 678, 718 P.2d 589 (Ct.App.1986). The state's interest in traffic safety, and the legitimacy of its objective of detecting alcohol-impaired drivers cannot be gainsaid. See generally *State v. Ankney,* 109 Idaho 1, 704 P.2d 333 (1985). This objective is served rationally by imposing a sanction of absolute suspension upon motorists who refuse to be tested. *State v. Breed,* 111 Idaho 497, 501, 725 P.2d 202, 206 (1986).

Construing the statutory language and the applicable case law, it is clear that I.C. § 18–8002 outlines the sanctions placed upon a motorist when he fails to comply with his statutory duty.

I.C. § 18–8002(4)(b) provides in part:

. . . .

(4) If the motorist refuses to take the evidentiary test after the information has been given in accordance with subsection (3) above:

. . . .

(b) ... the court shall suspend all his driving privileges immediately ... unless it finds that the police officer did not have probable cause to stop and request him to take the test or that the request violated his civil rights.

The "unless" language of subsection 4(b) allows for two issues to be raised at a hearing: (1) Whether probable cause existed for the police officer to make the stop; and (2) Whether the defendant's civil rights have been violated. In my view, the legislative intent is clear. A motorist is deemed to have given consent to testing for blood-alcohol content when an offficer has probable cause to believe the motorist is driving under the influence of intoxicants. The motorist must be advised of consequences of a refusal of testing. The right to request and choose an evidentiary test is the police officer's, not the detained party's. Refusal of the test is not an option of the detained party. An excuse such as a "fear of needles," to refuse an evidentiary test is irrelevant and beyond the causes enumerated in subsection (4)(b).

In *Department of Transportation, Bureau of Traffic Safety v. Bartle*, 93 Pa. Cmwlth. 132, 500 A.2d 525 (1985), a driver arrested for driving under the influence was asked to submit to a blood test because of a malfunctioning breathalyzer. The driver, however, refused the blood test because he was afraid of needles. He argued that such a refusal did not warrant suspension of his driver's license due to the fact that he had not been given the option of urinalysis. The Commonwealth Court of Pennsylvania rejected this argument and stated, "Anything less than an unqualified, unequivocal assent to take the test constitutes a refusal." Thus, the suspension was upheld on the basis of the court's belief that a motorist has a statutory duty to assent when he has exercised his operating privileges. *See also Commonwealth, Department of Transportation, Bureau of Drivers Licensing v. Curran*, 526 A.2d 1265 (1987); *Binder v. Commonwealth*, 99 Pa.Cmwlth. 548, 513 A.2d 1105, 1107 (1986); *Smith v. Commonwealth*, 97 Pa.Cmwlth. 74, 508 A.2d 1269 (1986). I.C. § 18–8002, like the Pennsylvania statute, requires submission to a chemical test and such submission is a statutory duty to which motorists consent when they exercise their operating privileges.

I would affirm the district court in its affirmance of the trial court, and hold that as a matter of law, any alleged excuses outside of the causes prescribed in subsection (4)(b) are irrelevant.

BAKES, J., concurs.